UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 24-40-DLB-CJS

MATTHEW MOSSER                                                                PLAINTIFF

v.                        **MEMORANDUM OPINION AND ORDER**

THE CRAMER-KRASSELT CO.
CKYP, LLC                                               DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the Motion to Dismiss filed by Defendants The Cramer-Krasselt Co. ("Cramer") and CKYP, LLC ("CKYP").[1] (Doc. # 6). Plaintiff Matthew Mosser ("Mosser") having filed a Response (Doc. # 12), and Cramer having filed a Reply (Doc. # 15), the Motion is now ripe for review. For the following reasons, Cramer's Motion is **granted**.

I.        FACTUAL AND PROCEDURAL BACKGROUND

This matter stems from Mosser's agreement to perform consulting services for Cramer. (Doc. # 1 ¶ 7). Mosser is an individual and citizen of the Commonwealth of Kentucky. (*Id.* ¶ 1). Cramer is a Delaware corporation with a principal place of business in Chicago, Illinois, and provides marketing and advertising services to clients located throughout the United States. (*Id.* ¶ 2).

---

[1]      In the Motion, Cramer submits that CKYP "no longer exists" and "was dissolved effective December 31, 2019, when it merged into [Cramer]." (Doc. # 6 at 1 n.1). Cramer further submits that the Motion "is made on its own behalf and in its capacity as successor in interest, by merger, to [CKYP]." (*Id.*). Based on these submissions, the Court will collectively refer to Defendants as "Cramer."

1

From 2003 to approximately May 2023, Cramer engaged Mosser as an independent sales consultant. (*Id.* ¶ 7). In this role, Mosser "was responsible for procuring new marketing and advertising clients" for Cramer, and in exchange was paid a commission initially amounting to 3 percent of each client's annual gross spend for Yellow Page advertising. (*Id.* ¶¶ 8-9). In 2003, Mosser secured the Cintas Corporation ("Cintas") as one of Cramer's clients. (*Id.* ¶ 10). From 2003 to 2009, Cramer paid Mosser his standard 3 percent commission on Cintas' annual gross spend for Yellow Page advertising. (*Id.* ¶¶ 10-11).

Beginning in 2009, companies started favoring digital advertising methods as opposed to traditional Yellow Page advertising. (*Id.* ¶ 12). To meet this new demand, Mosser, at Cramer's request, began soliciting digital advertising clients for Cramer. (*Id.* ¶ 14). At around this time, Mosser's commission structure changed to reflect the market shift toward digital advertising. (*Id.* ¶ 13). Specifically, Mosser was to be paid a 20 percent commission on the management fee charged by Cramer for digital advertising services sold to clients Mosser brought to Cramer. (*Id.* ¶ 15). This commission structure was implemented and used by the parties from 2009 until approximately May 2023, and was reflected in the parties' Independent Sales Consultant Agreement dated January 25, 2019 (the "Agreement"). (*Id.* ¶¶ 16-17). Although the Agreement was only for one year and expired by its terms in 2020, Cramer continued to pay Mosser the agreed upon 20 percent commission from 2020 until May 2023. (*Id.* ¶ 18). The Agreement was extended through a series of one-year extensions from 2020 through 2023. (Doc. # 6 at 2-3; Doc. # 12 at 4-7; Doc. # 15 at 3-4).

According to the Complaint, "Mosser cultivated a personal and professional relationship with Cintas over the 20-year period that he was engaged as a consultant for [Cramer]." (Doc. # 1 ¶ 21). Specifically, Mosser maintained "a close personal friendship with Cintas' employees and corporate officers," attended "personal and professional events sponsored by Cintas," and participated "in meetings and phone calls to discuss the Cintas advertising account and evolving strategies and campaigns." (*Id.*). Mosser alleges that Cramer was aware of Mosser's relationship with Cintas and "repeatedly asked Mosser to approach Cintas to obtain more digital marketing and advertising business for [Cramer][.]" (*Id.* ¶ 22). In 2017, Mosser successfully convinced Cintas to hire Cramer to provide additional digital advertising services, which "included multiple television and display advertising campaigns" (the "Campaigns"). (*Id.* ¶¶ 24-25). The Campaigns included Cintas' "Ready for the Workday" media campaign which generated Cramer over $12 million in revenue. (*Id.* ¶ 25).

After Mosser discussed his anticipated commission for the Campaigns with Cramer, Mosser was told "let's see where this goes" and "we'll address this at the end of Cintas' fiscal year." (*Id.* ¶¶ 26-27). According to Mosser, "[c]onstant excuses were made by [Cramer] as to why [it] would not pay Mosser [a] 20 [percent] commission" for the Campaigns, and "[t]o date[ ] [Cramer] [has] failed to pay Mosser a single dollar of commission for" his work on the Campaigns. (*Id.* ¶¶ 27-28). Cramer "ultimately claimed that [it] did not owe Mosser any commission tied to the [Campaigns] because there was no written agreement providing such." (*Id.* ¶ 29). However, Cramer continued to pay Mosser a 20 percent commission for all other digital marketing accounts he brought to Cramer "even though there was no written agreement in place." (*Id.* ¶ 30).

3

On March 22, 2024, Mosser initiated this action by filing his Complaint asserting one claim of unjust enrichment against Cramer. (*Id.* ¶¶ 33-40). On April 22, 2024, Cramer filed the instant Motion wherein it requests that the Complaint be dismissed for failure to state a claim upon which relief can be granted or, alternatively, under the doctrine of forum non conveniens. (Doc # 6). Mosser filed a Response (Doc. # 12), Defendant filed a Reply (Doc. # 15), and the Motion is now ripe for review.

## II.   DISCUSSION

### A.   Standard of Review

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted).

The plaintiff must put forward enough facts that the Court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Hooker v. Anderson*, 12 F. App'x 323, 325 (6th Cir. 2001)

4

(quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

**B.    Analysis**

Cramer moves to dismiss Mosser's Complaint for failure to state a claim upon which relief can be granted or, alternatively, under the doctrine of forum non conveniens. (Doc. # 6).  According to Cramer, Mosser's sole claim of unjust enrichment fails because the parties' relationship was contractual, and no unjust enrichment claim can stand where a contract controls.  (*Id.* at 4-7).  Cramer also argues that the Agreement and its various extensions required any related litigation to be brought in a state or federal court sitting in Chicago, Illinois, and accordingly that this case should be dismissed under the doctrine of forum non conveniens.  (*Id.* at 7-12).  Additionally, Cramer notes that the Agreement specifies that any disputes arising under it shall be governed by Illinois law.  (*Id.* at 2).  As an alternative to dismissal on forum non conveniens grounds, Cramer requests that the Court transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). (*Id.* at 12-13).

In his Response, Mosser argues that the Agreement and its extensions only applied to Cramer's so-called "Local Search" business which—according to Mosser—did not include the Campaigns.  (Doc. # 12 at 4-7).  In support, Mosser cites to language in the Agreement and its extensions which purportedly limit their scope.  (*Id.*).  Mosser also cites to an email in which Cramer's Executive Vice President and Chief Financial Officer opined that "[t]here is no agreement in place, or email where both parties mutually agree on the allowance of commissions related to the Cintas Ready for the Workday campaign." (*Id.* at 8-9).  Mosser finally argues that because the instant dispute does not relate to the Agreement, Cramer's venue arguments "are incorrect as a matter of law."  (*Id.* at 9).

5

In its Reply, Cramer argues that Mosser's characterization of the Agreement "is inconsistent with its plain language" and that the Agreement "should be broadly construed to bar . . . unjust enrichment." (Doc. # 15 at 3-9). Cramer also argues that the email Mosser flagged in his Response does not support his argument. (*Id.* at 9-10). Finally, Cramer argues that Mosser largely failed to respond to its venue arguments and that he accordingly "has . . . waived any response on [those] point[s]." (*Id.* at 10).

Before turning to the parties' respective arguments, the Court must address a preliminary issue. Although Mosser references the Agreement and, presumably, its various extensions in his Complaint, he did not attach them or otherwise provide them to the Court. Instead, it was Cramer who appended the documents to the Motion. (*See* Docs. # 6-2 and 6-3).

When addressing a Rule 12(b)(6) motion such as this one, courts ordinarily may only consult the allegations in the complaint together with any attached documents. *See Royer v. Medtronic, Inc.*, No. 3:12-CV-00367-JHM, 2013 WL 252898, at *2 (W.D. Ky. Jan. 23, 2013) (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011)). That said, the Court will refer to the Agreement and its extensions in addressing the instant Motion. This is because "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). As the Agreement and its extensions are central to Mosser's claim and referred to in the Complaint (as well as in Mosser's Response, *see* Doc. # 12 at 4-7), they may be consulted in analyzing the Motion to Dismiss.

6

As discussed above, the parties' dispute centers on whether the Agreement applies to the Campaigns. According to Mosser, the Agreement only relates to Cramer's "Local Search" business which is distinct from Cramer's "General Agency" business and—according to Mosser—does not include the Campaigns. (Doc. # 12 at 4-7). In support, Mosser notes that the Agreement's recitals state that "[Cramer] wishes to engage [Mosser] as an independent sales consultant for certain clients *with respect to [Cramer's] Local search business*[.]" (Doc. # 12 at 5) (emphasis modified). Mosser also flags the Agreement's compensation language. (*See id.* at 5-7). For example, the Agreement's most recent extension provided in pertinent part as follows:

> *With respect to the Cintas Local Search Business*, [Mosser] shall be entitled to receive commission equal to 15% of the net fees for Profiles and Call Tracking and equal to 7% of the net fees for Search as that business is described in the Scope of Work set forth in Amendment #10 to Agreement Between Cintas Corporation and Cramer-Krasselt dated June 1, 2022 . . . provided that the commission paid to [Mosser] with respect to Cintas shall not exceed $250,000 per year.
>
> * * *
>
> *With respect to other Clients Local Search business*, [Mosser] shall be entitled to receive commission equal to 15% of the net revenue generated from Clients Local Search business, during the Term of this Agreement . . . .

(*Id.* at 7) (emphasis modified).

Upon review, neither the Agreement nor its extensions provide any definition for "Local Search." (*See* Docs. # 6-2 and 6-3). Thus, the Court can only guess whether that term excludes the Campaigns as Mosser claims. And although Mosser alleges in his Response that the Campaigns were handled by Cramer's separate "General Agency" division, he did not include these allegations in his Complaint. Thus, they cannot be considered by the Court in addressing the Motion to Dismiss. *See Schwamberger v.*

7

*Marion Cnty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021) ("Although we read the complaint generously, we do not presume facts not alleged therein.").

Regardless, the Court notes that after detailing Mosser's compensation for "Local Search" business, the Agreement provides that *"[Mosser] shall not be entitled to revenue with respect to other business from Clients, whether directly through [Cramer] or [Cramer's] affiliates."* (Doc. # 6-3 at 5) (emphasis added).  The Agreement further provides that the compensation outlined therein "shall be [Mosser's] sole compensation under [the] Agreement" and that the Agreement "constitutes the entire understanding between the Parties concerning its subject matter[.]" (Doc. # 6-2 at 3-4).  Thus, even if the Agreement only details Mosser's compensation for Local Search business, it broadly and unambiguously states that he is only entitled to compensation as outlined in the Agreement.  Accordingly, the Agreement presumably applies to the parties' dispute.[2]

But before concluding as such, the Court must address a separate argument that Mosser raises.  After not receiving commission for the Campaigns, Mosser emailed Ante Lisnic, Cramer's Executive Vice President and Chief Financial Officer, to "touch base . . . on commission for the Cintas Ready for [the] Workday [campaign]." (Doc. # 12 at 8).  In response, Mr. Lisnic wrote Mosser that "[b]ased on [Mr. Lisnic's] review with [Cramer's] Legal department, all agreements have been related to Cintas Local Search and/or Yellow Pages work," and that "[t]here is no agreement in place, or email where both parties mutually agree on the allowance of commissions related to the [Campaigns]."

---

[2]     Upon review, it appears that one other provision of the Agreement might be relevant to the issues before the Court.  In pertinent part, the Agreement provides that "[f]or the avoidance of doubt, any incremental project work or revenue outside the [compensation for the Cintas Local Search Business] are not part of the commission and will be negotiated separately." (Doc. # 6-3 at 5).  However, apart from merely citing this clause, neither party addresses it or argues that it applies to this case, and the Court will not address it *sua sponte*.

(*Id.*).  According to Mosser:

> Cramer cannot – on the one hand – tell Mosser that there are no agreements that relate to the payment of commissions for revenues tied to the Cintas Media Campaign – and on the other hand – argue to the Court that Mosser's Complaint must be dismissed because there are agreements that control.  This is both incongruous and illogical.

(*Id.* at 9).

Although Mosser's argument has some initial curb appeal, it is nevertheless unavailing.  As discussed above, the Agreement unambiguously limits Mosser's compensation to its terms and broadly provides that Mosser "shall not be entitled to revenue with respect to other business from Clients, whether directly through [Cramer] or [Cramer's] affiliates."  (Doc. # 6-3 at 5).  Because the Agreement and its extensions are unambiguous as to Mosser's compensation, the Court cannot consider extrinsic evidence—such as Mr. Lisnic's email—to ascertain the parties' intent.  This is the case whether Kentucky or Illinois law applies to the present dispute.  *See Boodram v. Coomes*, No. 19-5313, 2019 WL 8333521, at *5 (6th Cir. Dec. 23, 2019) (citing *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016); *see also Much v. Pac. Mut. Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001) (citing *Omnitrus Merging Corp. v. Ill. Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993)).  Moreover, even if the Court were to consider Mr. Lisnic's email, it does not necessarily contradict Cramer's current arguments.  Indeed, as Cramer notes, "[s]aying 'we have a contract, and it does not give you what you want,' is not, as Mosser suggests, the same as saying the parties do not have a contract."  (Doc. # 15 at 9).

For the above reasons, the Court concludes that the Agreement and its extensions apply to the parties' dispute.  Mosser never claims that the Agreement was breached or

asserts a breach of contract claim. (*See* Docs. # 1 and 12). Accordingly, Mosser's sole claim of unjust enrichment cannot stand whether Kentucky or Illinois law applies to this dispute. *See Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 748 (W.D. Ky. 2013) ("Under Kentucky law, unjust enrichment 'has no application in a situation where there is an explicit contract which has been performed.'"); *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)) (Under Illinois law, when "two parties' relationship is governed by contract, they may not bring a claim for unjust enrichment unless the claim falls outside the contract."). Thus, the Court concludes that Cramer's Motion to Dismiss (Doc. # 6) shall be **granted** and Mosser's Complaint (Doc. # 1) is **dismissed** for failure to state a claim upon which relief can be granted.[3]

### III.   CONCLUSION

Thus, for the reasons set forth above, **IT IS ORDERED** that:

(1)   Cramer's Motion to Dismiss (Doc. # 6) is **GRANTED**;

(2)   This matter is stricken from the Court's active docket; and

(3)   A Judgment in favor of Cramer will be entered contemporaneously herewith.

This 16th day of August, 2024.



Signed By:
*David L. Bunning*
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2024\24-40 MOO on MTD.docx

---

[3]   Neither party challenges the Court's authority to dismiss the Complaint based on the Agreement's forum selection clause. (*See* Docs. # 6, 12, and 15). And because the Court concludes that the Complaint shall be dismissed on Rule 12(b)(6) grounds, it need not—and will not—address Cramer's separate venue arguments.